**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG DIVISION**

**LARRY SELLERS,**
a/k/a "L,"

    **Petitioner-Defendant,**

                                                                     Civil Action No. 1:11-cv-183
v.                                                  Criminal Action No. 1:08-cr-52-1
                                                        (JUDGE BAILEY)

**UNITED STATES OF AMERICA,**

    **Respondent-Plaintiff.**

**REPORT AND RECOMMENDATION TO THE DISTRICT JUDGE
RECOMMENDING THAT THE DISTRICT COURT DENY PETITIONER'S MOTION
UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

**I.    INTRODUCTION**

On November 21, 2011, Petitioner-Defendant Larry Sellers ("Petitioner"), proceeding *pro se*, filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Motion"). (Civil Action No. 1:11-cv-183, ECF No. 1; Criminal Action No. 1:08-cr-52-1, ECF No. 226.) That same day, the Clerk of Court sent Petitioner a Notice of Deficient Pleading, instructing him to file his Motion on the Court-approved form within twenty-one days from the date of the Notice. (Civil Action No. 1:11-cv-183, ECF No. 3; Criminal Action No. 1:08-cr-52-1, ECF No. 228.) Petitioner filed his Court-approved form ("Court-Approved Motion") on December 16, 2011. (Civil Action No. 1:11-cv-183, ECF No. 5; Criminal Action No. 1:08-cr-52-1, ECF No. 230 ("Court-Approved Mot").)

On January 11, 2012, the undersigned Magistrate Judge entered an Order directing Respondent, the United States of America ("Respondent" or "Government") to answer Petitioner's motion as set forth on the Court-approved form. (Civil Action No. 1:11-cv-183, ECF No. 6;

Criminal Action No. 1:08-cr-52-1, ECF No. 231.) The Government responded to Petitioner's Court-Approved Motion on February 6, 2012. (Civil Action No. 1:11-cv-183, ECF No. 8; Criminal Action 1:08-cr-52-1, ECF No. 235.) Petitioner replied to the Government's Response on March 2, 2012 ("Reply"). (Civil Action No. 1:11-cv-183, ECF No. 9; Criminal Action No. 1:08-cr-52-1, ECF No. 239 ("Reply").) The undersigned now issues this Report and Recommendation on Petitioner's motion without holding an evidentiary hearing. For the reasons stated below, the undersigned recommends that the District Judge deny Petitioner's motion to vacate.

## II. FACTS

### A. *Conviction and Sentence*

On July 1, 2008, the Grand Jury, sitting in Clarksburg, charged Petitioner in three counts of an eight-count Indictment. (Indictment, Criminal Action No. 1:08-cr-52-1, ECF No. 1.) Count One charged Petitioner and his co-defendants Ashley Adkins and Brandon Pugh with conspiracy to distribute and possess with intent to distribute more than five grams of cocaine base, in violation of 21 U.S.C. §§ 846 & 841(b)(1)(B). (*Id.*) Count Seven charged Petitioner with aiding and abetting the possession with intent to distribute more than five grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(B) and 18 U.S.C. § 2. (*Id.*) Count Eight charged Petitioner with maintaining a drug-involved premise, in violation of 21 U.S.C. § 856(a)(2).

On February 6, 2009, Petitioner signed a document waiving his right to a jury trial and requesting a bench trial before the Honorable John Preston Bailey, Chief United States District Judge. (Criminal Action No. 1:08-cr-52-1, ECF No. 140.) At the pretrial conference held the same day, Chief Judge Bailey confirmed that Petitioner understood he had a right to a trial by jury and that he was waiving this right despite his counsel's advise against proceeding to trial without a jury.

(Pretrial Conf. Tr., Criminal Action No. 1:08-cr-52-1, ECF No. 143 at 16:5-18:14.) A two-day bench trial was held before Chief Judge Bailey on February 10 and 11, 2009, after which Chief Judge Bailey directed the parties to file proposed findings of fact and conclusions of law. (Feb. 11, 2009 Trial Tr., Criminal Action No. 1:09-cr-52-1, ECF No. 155 at 540:11-15.) On March 30, 2009, in his Findings of Fact and Conclusions of Law, Chief Judge Bailey adjudged Petitioner guilty of Counts One, Seven, and Eight. (Order: Findings of Fact and Conclusions of Law, Criminal Action No. 1:08-cr-52-1, ECF No. 235 at 34-35.)

Petitioner appeared before Chief Judge Bailey on July 9, 2009 for sentencing. Chief Judge Bailey sentenced him to 292 months imprisonment on Counts One and Seven and 240 months imprisonment on Count Eight, all to be served concurrently. (Judgment in a Criminal Case, Criminal Action No. 1:08-cr-52-1, ECF No. 199.) Chief Judge Bailey also sentenced Petitioner to four years of supervised release on Counts One and Seven and three years of supervised release on Count Eight, all to be served concurrently. (*Id.*)

### B. *Direct Appeal*

Petitioner pursued a direct appeal to the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit"). On appeal, Petitioner challenged the sufficiency of the evidence, the reasonableness of his sentence, and the District Court's denial of his motion to depose co-defendant Ashley Adkins. *United States v. Sellers*, 383 F. App'x 251, 253, 2010 WL 2340252, at *1 (4th Cir. June 10, 2010) (per curiam). The Fourth Circuit affirmed Petitioner's conviction and sentence. *Id.*, 383 F. App'x at 255, 2010 WL 2340252, at *3. On November 29, 2010, the United States Supreme Court denied Petitioner's petition for a writ of certiorari. *Sellers v. United States*, 131 S. Ct. 682 (2010).

C.  *Federal Habeas Corpus*

   1.  **Petitioner's Court-Approved Motion**

In his Court-Approved Motion, Petitioner alleges that his counsel rendered ineffective assistance of counsel by:

   a.  Failing to investigate whether Petitioner was actually innocent of career offender status;

   b.  Failing to object to the use of false testimony by the Government's "star witness" to convict Petitioner;

   c.  Allowing him to go forward with a bench trial and not having him sign a waiver of jury trial; and

   d.  Not objecting to the admission of the money seized from Petitioner's apartment as evidence at trial.

(Court-Approved Mot. at 9-14.) As relief, Petitioner asks that the Court "remand for new trial." (*Id.* at 17.)

   2.  **Government's Response**

In its Response, the Government asserts that Petitioner's challenges are actually attacks on the District Court's rulings and that he provides little to no evidence to support his claims of ineffective assistance of counsel. (Resp. at 17.) Specifically, the Government argues that Petitioner's claim that counsel was ineffective by allowing him to go forward with a bench trial and by not having him sign a waiver is not true because Petitioner did sign a waiver and because Petitioner's counsel had been preparing for a jury trial. (*Id.* at 18-19.) The Government also alleges that Petitioner's counsel was not ineffective because she attempted to interview Ms. Adkins, the Government's "star witness," but was refused. (*Id.* at 19-20.) Similarly, the Government asserts that Petitioner's counsel did introduce evidence to refute evidence that the money seized from

Petitioner's apartment was legal. (*Id.* at 20.) Finally, the Government argues that because Petitioner does not contest the authenticity of his prior convictions for burglary, counsel was not ineffective for failing to object to the use of these convictions to qualify Petitioner for career offender status at sentencing. (*Id.* at 22-23.)

### 3. Petitioner's Reply

In his Reply, Petitioner reiterates the same arguments made in his Court-Approved Motion. (*See* Reply at 1-4.) He also asserts that counsel failed to advise him of the possibility of a plea agreement and that he would have pled guilty if he had received competent advice. (*Id.* at 1, 2-3.) Furthermore, Petitioner alleges that his counsel was ineffective for failing to argue that *United States v. Booker*, 543 U.S. 220 (2005) should apply retroactively and that the sentencing departures and enhancements used to increase his sentence above the base level violated the Fifth, Sixth, and Eighth Amendments. (*Id.* at 4.) He further concedes that he did sign a waiver of jury trial, but still argues that it was poor advice because his counsel failed to discuss the advantages of a plea. (*Id.*)

### D. *Recommendation*

Based upon a review of the record, the undersigned recommends that Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Civil Action No. 1:11-cv-183, ECF No. 1; Criminal Action No. 1:08-cr-52-1, ECF No. 226) be denied and dismissed because Petitioner has failed to meet the two prongs of *Strickland* to demonstrate any claims of ineffective assistance of counsel.

### III. ANALYSIS

### A. *Standard Governing Claims of Ineffective Assistance of Counsel*

The Supreme Court has set forth a two-prong test for determining whether a convicted

defendant's claim of ineffective assistance of counsel warrants the reversal of his conviction. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, "the defendant must show that counsel's performance was deficient." *Id.* Second, "the defendant must show that the deficient performance prejudiced the defense." *Id.* These two prongs are commonly referred to as the "performance" and "prejudice" prongs. *Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1297 (4th Cir. 1992).

To satisfy the "performance" prong, the defendant must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland*, 466 U.S. at 687. However, a reviewing court does not "grade" trial counsel's performance, and there is a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." *Carter v. Lee*, 283 F.3d 240, 249 (4th Cir. 2002). Essentially, the reviewing court must not "second-guess" counsel's performance and must "evaluate counsel's performance 'from counsel's perspective at the time.'" *Hunt v. Lee*, 291 F.3d 284, 289 (4th Cir. 2002). Furthermore, the standard of reasonableness is objective, not subjective. *See Strickland*, 466 U.S. at 688.

To satisfy the "prejudice" prong, the defendant must demonstrate that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. Therefore, if counsel's errors have no effect on the judgment, the conviction should not be reversed. *See id.* at 691. The Fourth Circuit has recognized that if a defendant "cannot demonstrate the requisite prejudice, a reviewing court need not consider the performance prong." *Fields*, 956 F.2d at 1297.

The Fourth Circuit has set forth two categories of decisions made by trial counsel when analyzing ineffective assistance of counsel claims. First, there are "personal" decisions that require

the defendant's consent, such as the decision to enter a guilty plea, the decision to waive a trial by jury, the decision to appeal, and the decision of whether to testify at trial. *Sexton v. French*, 163 F.3d 874, 885 (4th Cir. 1998) (citations omitted). The second category includes decisions that "'primarily involve trial strategy and tactics,' such as 'what evidence should be introduced, what stipulations should be made, what objections should be raised, and what pre-trial motions should be filed." *Id.* (quoting *United States v. Teague*, 953 F.2d 1525, 1531 (11th Cir. 1992)). Accordingly, "[t]here is a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect." *Harrington v. Richter*, 131 S. Ct. 770, 790 (2011) (citations omitted) (internal quotation marks omitted).

B.  *Analysis of Petitioner's Ineffective Assistance of Counsel Claims*

   1.  **Claim 1: Counsel Failed to Investigate Whether Petitioner Was Actually Innocent of the Career Offender Category**

In his Court-Approved Motion, Petitioner asserts that his counsel was ineffective for failing to investigate his prior convictions for burglary. (Court-Approved Mot. at 9.) Specifically, he alleges that these burglary charges were not the type to qualify for career offender status. (*Id.*) Petitioner relies on *Carachuri-Rosendo v. Holder*, 130 S. Ct. 2577 (2010), *Begay v. United States*, 553 U.S. 137 (2008), *United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011), and *Navarro-Lopez v. Gonzales*, 503 F.3d 1063 (9th Cir. 2007) (en banc) to support his position that daytime burglary convictions do not qualify for career offender consideration. (*Id.*; *see also* Mot. at 8.) For the reasons discussed below, the undersigned finds that Petitioner's claim has no merit.

As an initial matter, none of the cases cited by Petitioner actually support his position. In *Carachuri-Rosendo*, the Court held that for a conviction to qualify as an "aggravated felony" under the Immigration and Nationalization Act, "the defendant must *also* have been *actually convicted* of

a crime that is itself punishable as a felony under federal law." *Carachuri-Rosendo*, 130 S. Ct. at 2589. As the Court further explained, "[t]he mere possibility that the defendant's conduct, coupled with facts outside of the record of conviction, could have authorized a felony conviction under federal law is insufficient." *Id*. *Begay* considered whether driving under the influence was a "violent offense" within the meaning of the Armed Career Criminal Act, which applies to those defendants who unlawfully possess firearms and have three or more previous convictions for certain drug crimes or violent felonies. *Begay*, 553 U.S. at 139-40. In *Simmons*, the Fourth Circuit recognized that after *Carachuri-Rosendo*, the Government can no longer rely on hypothetical sentencing enhancements to set a maximum term of imprisonment, nor can a court consider hypothetical aggravating factors when calculating a defendant's maximum punishment. *Simmons*, 649 F.3d at 243, 244. Finally, *Navarro-Lopez*, which has been overruled, considered whether a conviction for accessory after the fact was a crime involving moral turpitude to support an alien's removal from the United States. *Navarro-Lopez*, 503 F.3d at 1074, *overruled by United States v. Aguila-Montes de Oca*, 655 F.3d 915 (9th Cir. 2011). None of these cases dealt with burglary charges or distinguished between nighttime and daytime burglary.

Here, Petitioner asserts that he was convicted of daytime burglary in Ohio and West Virginia that daytime burglary charges are "not the type to qualify for the enhancement." (Court-Approved Mot. at 9.) Under § 4B1.1 of the United States Sentencing Guidelines:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S. Sentencing Guidelines § 4B1.1(a). The Guidelines define a "crime of violence" as "any

offense under federal or state law, punishable by imprisonment for a term exceeding one year, that–

> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S. Sentencing Guidelines § 4B1.2. "Because the language defining a violent felony in [18 U.S.C.] § 924(e) is nearly identical to and materially indistinguishable from the language defining a crime of violence in USSG § 4B1.2, [courts in the Fourth Circuit] look to . . . case law interpreting both sections when examining whether a prior crime falls within these sections." *United States v. Roseboro*, 551 F.3d 226, 229 n.2 (4th Cir. 2009) (alterations in original) (citing *United States v. Johnson*, 246 F.3d 330, 333 (4th Cir. 2001)).

The Fourth Circuit has already determined that the definition of daytime burglary in West Virginia "satisfies the generic definition of burglary because it has as elements the unlawful or unprivileged entry into a building with the intent to commit a crime." *United States v. Lewis*, 75 F. App'x 164, 166, 2003 WL 22131439, at *2 (4th Cir. 2003); *see also* W. Va. Code. § 61-3-11(a)-(b) Therefore, daytime burglary convictions under the West Virginia statute qualified as violent felonies under 18 U.S.C. § 924(e). *See id.* The United States Court of Appeals for the Sixth Circuit has held that burglary in Ohio is a crime of violence under 18 U.S.C. § 924(e). *See United States v. Holycross*, 333 F. App'x 81, 85-86, 2009 WL 1811752, at *3-4 (6th Cir. 2009); *United States v. Lane*, 909 F.2d 895, 903 (6th Cir. 1990); *see also* Ohio Rev. Code Ann. § 2911.12 While Petitioner's Pre-Sentence Report does not specify whether his West Virginia and Ohio burglary convictions were for daytime burglary, (*see* Pre-Sentence Report, Criminal Action No. 1:08-cr-52-1, ECF No. 242 at 13), they would still qualify as crimes of violence under § 4B1.1. *See Roseboro*, 551 F.3d at 229 n.2.

Furthermore, § 41B.2(2) does not distinguish between daytime and nighttime burglary of a dwelling. Even assuming that Petitioner's counsel unreasonably failed to investigate his career offender status, Petitioner has not demonstrated that counsel's alleged failure prejudiced his defense in any way. Therefore, the undersigned recommends that Petitioner's claim be dismissed because he has failed to meet his burden under the two prongs of *Strickland*.

### 2. Claim 2: Counsel Was Ineffective Regarding the Government's "Star Witness," Ashley Adkins

As his second claim for relief, Petitioner asserts that his counsel was ineffective because he was convicted by the use of false testimony. (Court-Approved Mot. at 10.) Specifically, Petitioner alleges that the Government's "star witness," Ashley Adkins, provided false testimony and states that if he and his counsel "had been afforded witness statements prior to trial (302'a) the witness could have been impeached." (*Id.*) However, the undersigned finds that Petitioner's claim is without merit.

To the extent that Petitioner challenges the District Court's denial of his motion to depose co-defendant Ashley Adkins, he may not now recast this claim under the guise of a collateral attack because the Fourth Circuit determined on direct appeal that the District Court did not abuse its discretion in denying Petitioner's motion. *See Sellers*, 383 F. App'x at 254, 2010 WL 2340252, at *2; *see also Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976) (issues previously rejected on direct appeal may not be raised by prisoners in a collateral attack). However, claims of ineffective assistance of counsel are more appropriately raised during collateral attack than on direct appeal. *See Richardson*, 195 F.3d at 198.

The record contains sufficient evidence that Petitioner's counsel was effective in her handling of Adkins' testimony. As noted above, on January 21, 2009, Petitioner's counsel filed a motion to depose Adkins prior to trial. (Motion, Criminal Action No. 1:08-cr-52-1, ECF No. 103.) In this

motion, Petitioner's counsel stated that she had arranged with Adkins' counsel for an interview to take place on January 7, 2009. (*Id.* at 1.) However, when Petitioner's counsel called to reschedule the interview on January 16, 2009, she was informed that Adkins no longer wanted to be interviewed. (*Id.*) On January 23, 2009, Chief Judge Bailey denied Petitioner's motion, noting that no statute or case gave Petitioner the right to depose Adkins when she voluntarily chose not to speak to Petitioner's counsel. (Order Denying Defendant's Motion to Depose Ashley Adkins, Criminal Action No. 1:08-cr-52-1, ECF No. 107.) Therefore, it appears that Petitioner's argument concerns the Court's denial of his motion, not his counsel's performance.

Furthermore, Petitioner's counsel and co-defendant Pugh's counsel attempted to impeach Adkins' during the bench trial. Specifically, they questioned Adkins' drug use, her plea agreement with the Government, and her credibility in an attempt to impeach her testimony. (*See* Feb. 10, 2009 Trial Tr., Criminal Action No. 1:08-cr-52-1, ECF No. 154 at 171-207.) However, in his Order adjudging Petitioner guilty, Chief Judge Bailey noted that Adkins' testimony concerning how she typically conducted drug transactions with Petitioner was corroborated by other witnesses' testimony. (Order: Findings of Fact and Conclusions of Law at 6-7, 23.) Furthermore, Chief Judge Bailey found that Adkins was credible, even after considering her use of controlled substances, her felony conviction, and her potential interest in the case's outcome. (*Id.* at 32-33.) Again, it appears that Petitioner's argument takes issue with the Court's finding that Adkins provided credible testimony, not his counsel's performance. Therefore, the undersigned recommends that this claim be dismissed because Petitioner cannot meet his burden under the two prongs of *Strickland*.

    **3.**    **Claim 3: Counsel Was Ineffective for Allowing Petitioner to Proceed With a Bench Trial**

As his third claim in his Court-Approved Motion, Petitioner alleges that his counsel was

ineffective for allowing him to go forward with a bench trial rather than a jury trial. (Court-Approved Mot. at 12.) Specifically, Petitioner asserts that he did not sign a jury waiver and that his counsel knew that the judge "was privy to information a Jury would not have known." (*Id.*) However, in his Reply, he concedes that he did sign a jury trial waiver. (Reply at 4.) The undersigned finds that Petitioner's claim is without merit.

As discussed above, the decision to waive trial by jury is one requiring the defendant's consent. *Sexton*, 163 F.3d at 885. As Petitioner concedes, he did sign a jury trial waiver. (Reply at 4; *see also* Waiver of Right to Trial By Jury, Criminal Action No. 1:08-cr-52-1, ECF No. 140.) Furthermore, Petitioner and his co-defendant, Brandon Pugh, orally requested a bench trial during their pretrial conference on February 6, 2009. (Order of Pretrial Conference, Criminal Action No. 1:08-cr-52-1, ECF No. 144.) Chief Judge Bailey confirmed that Petitioner had discussed this with his counsel and that his waiver of a jury trial was knowing and voluntary. (*Id.*)

Furthermore, at the pretrial conference, Chief Judge Bailey confirmed that Petitioner understood that his waiver of a jury trial was against the advice of counsel. (*Id.*) The record, therefore, demonstrates that Petitioner's counsel had been preparing for a jury trial up until the oral motion for a bench trial at the pretrial conference. In fact, by the time of the pretrial conference, Petitioner's counsel had filed proposed voir dire (Criminal Action No. 1:08-cr-52-1, ECF No. 105), proposed jury instructions (Criminal Action No. 1:08-cr-52-1, ECF No. 114), and a motion challenging the jury pool (Criminal Action No. 1:08-cr-52-1, ECF No. 127).

In sum, the record is replete with evidence that Petitioner's counsel was originally pursuing a jury trial strategy, and that this only changed when Petitioner insisted on a bench trial at the pretrial conference. Furthermore, Petitioner asserted that the pretrial conference that he wished to proceed

with a bench trial against the advice of his counsel, and he signed a written waiver of jury trial. Therefore, because Petitioner personally chose to proceed to a bench trial, the undersigned recommends that this claim be dismissed because Petitioner has failed to meet his burden under the two prongs of *Strickland*.

4. **Claim 4: Counsel Was Ineffective Regarding the Admission into Evidence of the Money Seized from Petitioner's Apartment**

As his fourth claim in his Court-Approved Motion, Petitioner alleges that the money recovered during the investigation of his case should not have been admitted into evidence as his case. (Court-Approved Mot. at 14.) Specifically, Petitioner asserts that his counsel knew that he had a witness come to court and testify that the money was given by him to Petitioner, and that counsel was ineffective because the money was still admitted. (*Id.*) However, the undersigned finds that Petitioner's claim has no merit.

The record contains evidence belying Petitioner's claim that counsel failed to do anything regarding the admission of this money. At trial, First Sergeant Steve Ford of the Morgantown Police Department testified that during a search of Petitioner's apartment, $1,000 was located in a cell phone manual which was found in a gym bag in the bedroom occupied by Petitioner's co-defendant, Brandon Pugh. (Feb. 11, 2009 Trial Tr., Criminal Action No. 1:08-cr-52-1, ECF No. 155 at 343:10-18, 348:1-10.) United States currency was also located in Pugh's dresser drawer. (*Id.* at 325:11-14; 349:10-14.) Furthermore, Officer Jason Ammons of the Morgantown Police Department testified that after searching Petitioner's bedroom, agents found a grey hooded sweatshirt containing $3,000 in a plastic bag in the left-side pocket. (*Id.* at 379:16-380:22.) Officer Ammons further testified that the entire amount of prerecorded "buy money" was mixed in with the $3,000 recovered from the sweatshirt. (*Id.* at 380:23-381:7.) On cross-examination by Petitioner's counsel, Officer Ammons

confirmed that $81 was found in Pugh's wallet and $150 was found in Pugh's dresser drawer. (*Id.* at 417:19-418:4.)

During Petitioner's case, Petitioner's counsel presented the testimony of Steve Bellman, who at the time had a used car lot business in Morgantown, West Virginia. (*Id.* at 487:13-20.) Mr. Bellman testified that he knew Petitioner because he had bought cars from Petitioner for his business. (*Id.* at 487:23-488:4.) Specifically, Mr. Bellman testified that on March 20, 2008, he had bought a 1995 Chevrolet Impala SS from Petitioner for $2,900. (*Id.* at 488:8-17, 490:8-10.) Petitioner's counsel also presented the testimony of Lindsey Frye, Petitioner's girlfriend. (*Id.* at 514:24-25, 530:25.) Specifically, Ms. Frye testified that Petitioner enjoyed purchasing vehicles, fixing them, and selling them to Mr. Bellman in Morgantown. (*Id.* at 522:22-523:8.)

This evidence from the record demonstrates that Petitioner's counsel was far from ineffective in challenging where the money found in his apartment came from. Instead, Petitioner appears to take issue with the Court's decision to forfeit the money, partly because the entire amount of prerecorded "buy money" from the last drug transaction was found among the money located in Petitioner's sweatshirt pocket. (Order: Findings of Fact and Conclusions of Law at 19, 26, 34.) Therefore, because Petitioner disagrees with the Court's decision to disagree with the testimony of Mr. Bellman and Ms. Frye and overlooks counsel's presentation of this evidence to attempt to establish the legality of the money, the undersigned recommends that this claim be dismissed because Petitioner has failed to meet his burden under the two prongs of *Strickland*.

    **5.**    **Claims Raised in Petitioner's Reply**

In his Reply, Petitioner asserts that his counsel was ineffective because she failed to argue that *United States v. Booker*, 543 U.S. 220 (2005) should apply retroactively and that the enhancements

used to increase his sentence violate the Fifth, Sixth, and Eighth Amendments. (Reply at 4.) Petitioner also alleges that his counsel failed to discuss the advantages of entering into a plea agreement. (*Id.* at 1, 4.) Usually, a party cannot raise new matters in a reply brief when the opposing party has no opportunity to respond to these new matters. *See United States v. Cox*, 7 F.3d 1458, 1469 (9th Cir. 1993). However, the Court will consider Petitioner's arguments.

### a. Claim 5: Petitioner's Counsel Failed to Argue that *Booker* Should Apply Retroactively and that the Sentencing Enhancements Violated the Fifth, Sixth, and Eighth Amendments

In his Reply, Petitioner asserts that his counsel was ineffective for failing to argue that *United States v. Booker*, 543 U.S. 220 (2005) should apply retroactively. (Reply at 4.) He also alleges that counsel was ineffective for failing to argue that the enhancements used to increase his sentence above the base offense level violate the Fifth, Sixth, and Eight Amendments. (*Id.*) However, the undersigned finds that Petitioner's argument has no merit.

First, Petitioner cannot demonstrate that his counsel was ineffective for failing to argue that *Booker* should apply retroactively and that the enhancements violated the Sixth Amendment. *Booker* was decided in 2005. *See Booker*, 543 U.S. at 220. Petitioner was sentenced on July 9, 2009. (Judgment in a Criminal Case, Criminal Action No. 1:08-cr-52-1, ECF No. 199.) Therefore, retroactive application of *Booker* was not at issue in Petitioner's case, and therefore counsel was not ineffective for failing to raise this argument.[1] Similarly, in *Booker*, the Supreme Court held that mandatory application of the Sentencing Guidelines violated the Sixth Amendment. *Booker*, 543 U.S. at 226-27. However, the *Booker* Court's remedy was to sever 18 U.S.C. § 3553(b)(1) (2000 ed.,

---

[1] The Court notes, however, that the *Booker* Court explicitly stated that its holding would apply to all cases on direct review at the time of the *Booker* decision. *Booker*, 543 U.S. at 268.

Supp. IV), the provision of the statute making the Guidelines mandatory so that the Guidelines became, effectively, advisory. *Id.* at 245. While Petitioner does not provide evidence for how any enhancements to his sentence violated the Sixth Amendment, counsel was not ineffective for failing to raise this argument given the *Booker* decision.

Second, Petitioner cannot demonstrate that his counsel was ineffective for failing to argue that the enhancements used to increase his sentence above his base offense level violate the Fifth and Eighth Amendments. The Fourth Circuit has determined that no Eighth Amendment violation occurs when a defendant's sentence falls within the range provided by the Sentencing Guidelines. *See United States v. Francois*, 889 F.2d 1341, 1343 (4th Cir. 1989); *see also United States v. Hudspeth*, 161 F.3d 4, 1998 WL 613953, at \*4 (4th Cir. 1998). Furthermore, there is no merit to claims that the Sentencing Guidelines deny due process or equal protection under the Fifth Amendment. *See United States v. Jones*, 18 F.3d 1145, 1151 (4th Cir. 1994); *Francois*, 889 F.2d at 1343. In light of Petitioner's career offender status, any arguments regarding the application of sentencing enhancements were rendered moot, even though Petitioner's counsel argued that the evidence did not support the two-level enhancement for his role in the offense. (*See* Sentencing Hrg. Tr., Criminal Action No. 1:08-cr-52-1, ECF No. 206 at 3:12-4:22, 6:21-7:5; *see also* Pre-Sentence Report, Criminal Action No. 1:08-cr-52-1, ECF No. 242 at Addendum.) Indeed, as Petitioner's counsel noted, Petitioner accepted that his criminal history placed him at Level Six. (*Id.* at 7:4-5.)

Even so, Petitioner's guidelines called for 262 to 327 months incarceration for Counts One and Seven and 240 months incarceration for Count Eight. (*Id.* at 5:21-23.) Petitioner was sentenced to 292 months incarceration on Counts One and Seven and 240 months incarceration on Count Eight, all to be served concurrently. (*Id.* at 12:16-21.) Therefore, no Eighth Amendment violation exists

because Petitioner was sentenced within the range provided for by the Guidelines, and any argument by counsel to this effect would have been futile. *See Francois*, 889 F.2d at 1343. Similarly, any argument by counsel that the enhancements provided for by the Guidelines violate the Fifth Amendment would also have been futile. *See Jones*, 18 F.3d at 1151; *Francois*, 889 F.2d at 1343.

In sum, Petitioner's arguments must fail. Not only was counsel not ineffective for failing to argue that *Booker* should apply retroactively, but counsel was not ineffective for failing to argue that enhancements to Petitioner's sentence violated the Fifth, Sixth, and Eighth Amendments. Therefore, the undersigned recommends that this claim be dismissed because Petitioner has failed to meet his burden under the two prongs of *Strickland*.

### b. Claim 6: Petitioner's Counsel Failed to Advise of the Option to Enter a Plea Agreement

In his Reply, Petitioner also alleges that his counsel rendered ineffective assistance by failing to advise him of the option to enter a plea agreement. (Reply at 1, 3-4.) Specifically, Petitioner argues that if he had known of the possibility of entering a plea, he "would have pled guilty and received a lesser sentence." (*Id.* at 1.) As discussed above, Petitioner was properly sentenced as a career offender, resulting in a total adjusted base offense level of 34. (*See* Sentencing Hrg. Tr. at 5:14-19.) Even assuming that counsel failed to communicate the possibility of entering a plea agreement to Petitioner and so "was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment," *Strickland*, 466 U.S. at 687, Petitioner has provided no support for his assertion that he would have received a lesser sentence if he had pled guilty. Therefore, because Petitioner cannot demonstrate that counsel's alleged failure prejudiced his defense, as required by the second prong of *Strickland*, the undersigned recommends that this claim be dismissed.

## IV. RECOMMENDATION

Based upon a review of the record, the undersigned recommends that Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Civil Action No. 1:11-cv-183, ECF No. 1; Criminal Action No. 1:08-cr-52-1, ECF No. 226) be **DENIED** and **DISMISSED** because Petitioner has failed to meet the two prongs of *Strickland* to demonstrate any claims of ineffective assistance of counsel.

Within **fourteen (14) days** after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable John Preston Bailey, Chief United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia. The Court further directs the Clerk of the Court to mail a copy of this Report and Recommendation to the *pro se* Petitioner Larry Sellers.

**DATED**: March 8, 2012

DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE